LEONARD W. MORITZ CO. AND LACTA SEPARATOR CO., INC. *v*. UNITED STATES

No. 5072.—Invoices dated Helsingfors, Finland, January 17, February 8, 1936.
   Certified January 18, February 8, 1936.
   Entered at New York February 7, Mar. 3, 1936.
   Entry Nos. 345663, 807889.

(Decided December 16, 1940)

*Barnes, Richardson & Colburn* (*J. Bradley Colburn and Joseph Schwartz* of counsel) for the plaintiffs.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Dorothy C. Bennett* and *Daniel I. Auster*, special attorneys), for the defendant.

DALLINGER, Judge: These appeals to reappraisement involve the question of the dutiable value of certain cream separators imported from Finland and entered at the port of New York in February and March 1936.

At the first hearing, held at New York on October 19, 1937, the plaintiffs offered in evidence an affidavit executed by the foreign seller of the involved merchandise, which was admitted in evidence as exhibit 3. The Government offered in evidence a copy of a telegram from Seymour Lowman, Acting Secretary of the Treasury, addressed to the collector of customs at the port of New York, and a book entitled: "Treasury Department Customs Catalogue No. 3418" referred to in said telegram, which were marked exhibits 1 and 2 for identification, respectively, both of which at a later hearing were admitted in evidence as exhibits 1 and 2, respectively. The Government also offered in evidence four reports of special agents, which reports were admitted in evidence as exhibits 4, 5, 6, and 7, respectively. The official papers were also admitted in evidence without being marked.

Also at said first hearing counsel for the plaintiff moved for judgment vacating the appraisement as null and void on the ground that the collector had failed to designate and the appraiser had failed to

(685)

examine 1 out of every 10 packages of the involved merchandise, as required by the mandatory provisions of section 499 of the Tariff Act of 1930.

At the close of the hearing the plaintiffs' motion was taken under advisement and the cases submitted, the parties being given time within which to file briefs, which briefs were duly filed.

On November 1, 1939, counsel for the plaintiffs moved to set aside the submission, and on November 20, 1939, said motion was granted and the cases restored to the docket.

At the second hearing, held before me in New York on January 16, 1940, counsel for the plaintiffs made the following preliminary statement:

Mr. SCHWARTZ. If the Court please, this case is here on a motion made by the plaintiff to set aside the submission and restore the case to the calendar. The plaintiff made a motion, when the case was originally tried to vacate the appraisements on the ground that the designation and examination was faulty, in that less than one out of ten were designated and examined. The Government, to meet that motion, offered in evidence, and I think it was received in evidence, a certain Customs catalogue and a certain telegram which the Government said constituted a special regulation; the telegram purporting to change the rule which was stated in the Customs catalogue. At the time we tried this case, I was confident that the burden was on the Government to show that the so-called special regulation was in fact a special regulation and was duly promulgated, because the Government is in a better position than anybody else to show that; certainly in a better position than the importer. However, in another case, of which Your Honor is undoubtedly familiar, the Court of Customs Appeals has since said that the burden is on us, and we are here today in an attempt to show that that telegram was not promulgated.

The copy of the telegram referred to, which was admitted in evidence as exhibit 1, reads as follows:

WASHINGTON. *June 25, 1932.*

COLLECTOR OF CUSTOMS,
     *New York, N. Y.*

General rule page three customs catalogue thirty four eighteen at head of list of imports changed to read as follows quote in the opinion of the Secretary of the Treasury the Examination at the Appraisers Stores on the wharf or elsewhere of samples or representative packages although constituting a less proportion than ten per cent of the shipment is considered amply sufficient to protect the revenue when merchandise is bought by sample or is imported in packages of same contents and value or when purchased at the same price per unit of weight gauge or measure but in no case shall less than one percent be examined except upon specific authority from the Department unquote.

SEYMOUR LOWMAN,
*Acting Secretary of the Treasury.*

The plaintiffs then proceeded to offer in evidence the testimony of five witnesses. The first, Leonard W. Moritz, a customs broker in the city of New York for the past 20 years, testified that he prepared and filed the entries in the instant cases; that at the time of doing so he was not aware of the existence of the telegram (exhibit 1);

that no one in the custom house ever called his attention to it or to a copy thereof; that none of the entry clerks ever called his attention to said telegram; and that he had never seen the telegram in question posted on a bulletin board in the customhouse.

The second witness, Edward J. Sheridan, customhouse representative of W. J. Byrnes & Co., customs brokers for the past 15 years, testified that it was his duty to file customs entries for his company at the customhouse; that he visited the customhouse every day; that he was not interested personally in the instant cases; that the bulletin board is right opposite his box in the customhouse and that he usually observes what is posted thereon; that it is customary to post announcements and notices of interest to customhouse brokers in connection with the passing of entries on said bulletin board; that there is another bulletin board in the customhouse in the front of the building, but that it is not customary to post announcements of general interest to customs brokers on that bulletin board; and that as part of his duties he has always kept posted on matters concerning the making and passing of entries.

Being shown exhibit 1, the witness testified that nobody in the custom house had ever called his attention to said telegram or to a copy thereof; that he had never seen it posted on the bulletin board in the Entry Division; that he had never seen it posted anywhere in the customhouse; and that no collector, deputy collector, assistant collector, or any other customs official had ever advised him of the existence of said telegram.

On cross-examination he testified that he read the Journal of Commerce once in a while; and that it publishes customs regulations and rulings and is subscribed to by a majority of customs brokers.

The third witness, David W. Benedict, testified that he was in the court room in response to a subpoena addressed to the collector of customs; that he had discussed the case with Government counsel before coming into court; that one of the subpoenas called for the production of a certain telegram showing the official receipt in the collector's office with the time stamped thereon.

At this juncture the original of the telegram (exhibit 1) showing receipt at the New York customhouse on June 27, 1932, was admitted in evidence as exhibit 8.

The witness then proceeded to testify that he had been chief clerk of the Entry Division in the collector's office since March 1, 1938; that he was employed in the Entry Division in 1932; that the telegram (exhibit 8) came from the correspondence room of the collector's office; that the pencil notation on said original telegram "copy to Appr." would indicate that a copy should be sent to the appraiser; that the pencil notation "and Surveyor" indicated that a copy should also be sent to the surveyor; that there was nothing in the telegram to

indicate that it was sent to any other officer than those specified; and that the telegram was circulated among the entry clerks in the collector's office.

At this point counsel for the Government conceded that a copy of said telegram (exhibit 1) was never printed in the TREASURY DECISIONS.

On cross-examination the witness testified that customs catalog 3418 (exhibit 2) was part of his regular equipment as an entry clerk, and that he had it on his desk in February and March 1936, with a copy of the telegram (exhibit 1) written on the back cover thereof.

At this juncture a copy of the telegram in question, with a number of initials in the margin thereof, was admitted in evidence as exhibit 9, for the purpose of showing that the copy was circulated among all the entry clerks in the collector's office.

The witness then testified that the initials on exhibit 9 were the initials of the entry clerks in the collector's office, and signified that each of them had seen a copy of the telegram and recorded it in his copy of customs catalog 3418 or in some other book.

At this juncture the copy of customs catalog 3418 (commonly known as an order book) used by Executive Entry Clerk McCort in 1936 was admitted in evidence as exhibit 10, for the purpose of showing that the said McCort had written a copy of the telegram (exhibit 1) at the bottom of the inside back cover of said book.

The fourth witness, P. Martin Ollinger, testified that he was in the employ of Strauss & Hedges, customs attorneys, for the past 26 years; that it was his duty to examine all records at the customhouse; that he visited the customhouse every day; that on December 1, 1939, at the request of counsel, he examined both bulletin boards in the customhouse and failed to find a copy of the telegram (exhibit 8) posted thereon.

On cross-examination the witness testified that he was familiar with the Journal of Commerce but did not subscribe to it, but that he thought his office subscribed to it in 1932. In answer to a question by the court, the witness testified that he was accustomed to visit the customhouse daily during February and March 1936, and that he had never seen a copy of the telegram (exhibit 1) posted on any of the bulletin boards.

The fifth witness, William P. Zwinge, testified that he had been the deputy collector in charge of the entry division for about 15 years, but that he had retired in January 1934. Being shown exhibit 8, he testified that his initials were on the same; that the telegram in question was originally delivered to him by a messenger from the correspondence bureau; that having checked it as having been received by him he probably sent it to the entry clerks for their examination and

checking; and that no copies of the telegram (exhibit 8) were made for any of the importers or customs brokers unless requested.

The witness then testified as follows:

Q. Do you know whether this telegram was circulated among importers?— A. I don't think so.

Q. Do you know whether it was circulated among brokers?—A. I don't think so. I don't know. I can't tell what was done with it afterwards or before.

* * * * * * *

Q. You, of course, recall the bulletin board somewhere near or in the Entry Division?—A. What you call a bulletin board is where they have weather bureau reports, and they put any ticket on there they wanted for special notice. If the Entry Division ever wanted to give any particular notice to brokers, it would put it out at the receiving desk where entries are lodged. There is a window where entries are given a number.

Q. Was such a notice given in connection with this telegram?—A. I do not think so.

At this juncture the following colloquy took place:

Mr. Schwartz. * * * If the Court please, at this time I desire to offer in evidence two letters written to my firm, from the Treasury Department, in response to communications sent by us, dated November 20, 1939, and January 4, 1940, from which it appears that the Treasury Department itself doesn't know whether this telegram was ever promulgated, and I therefore offer it in evidence to show that fact.. It is an indication that it was not promulgated, for if it was, the Treasury Department would know.

Mrs. Bennett. The Government objects to these letters. They are written from Washington. Any promulgation was made at New York, where the customs brokers filed the entries. The catalogue and the telegram refer only to the port of New York, not to any other port. * * *.

Judge Dallinger. You contend that it was not the duty of the Treasury Department to see this was published?

Mrs. Bennett. Promulgation does not necessarily mean printing in the T. D.'s.

Judge Dallinger. That is the usual way, isn't it? Isn't that the usual way in which the Treasury Department lets the public know about their regulations, and orders, and instructions?

Mrs. Bennett. I don't know. I believe that the T. D.'s would be so large that we wouldn't be able to carry them in our libraries if that were the usual or even the best method, but certainly every regulation issued by the Treasury Department throughout the country cannot be published in those small volumes.

Objection of counsel for the Government was overruled and the correspondence was admitted in evidence as collective exhibit 11. It reads as follows:

October 31, 1939.

Commissioner of Customs,
Bureau of Customs,
Washington, D. C.

Dear Sir:

We refer to Customs Catalogue #3418 and the telegram of June 25, 1932 addressed to the Collector of Customs at New York changing the general rule on page 3 of said Customs Catalogue #3418.

Will you please advise us whether the said Customs Catalogue 3418 and the said letter of June 25, 1932 were ever published as Treasury Decisions, or otherwise, or were promulgated as a special regulation by the Secretary of the Treasury.

Very truly yours,

JS/gc

TREASURY DEPARTMENT

Bureau of Customs

Washington

Nov. 20, 1939.

Barnes, Richardson & Colburn,
Attorneys & Counsellors at Law,
Two Rector Street,
New York, N. Y.

Gentlemen:

Receipt is acknowledged of your communication of October 31, 1939 (JS/gc) with reference to customs catalog number 3418 and a telegram of June 25, 1932, addressed to the collector at New York changing the general rule on page 3 of said customs catalog, and your inquiry as to whether such customs catalog and telegram were ever published as Treasury decisions, or otherwise, or were promulgated as a special regulation by the Secretary of the Treasury.

Your communication is receiving prompt attention and a further reply will be sent to you as soon as possible.

By direction of the Commissioner:

Very truly yours,

/s/ B. H. FLINN,
B. H. Flinn,
*Chief, Entry and Appraisement.*

POSTAL TELEGRAPH

January 3 1940

B H Flinn
Chief, Entry and Appraisement
Bureau of Customs .
Treasury Department
Washington, D C

Would appreciate early reply our letter October 31 1939 relative customs catalogue 3418 and telegram of June 25 1932

Barnes Richardson & Colburn
2 Rector Street
New York

TREASURY DEPARTMENT

Bureau of Customs

Washington

Jan. 4, 1940.

Barnes, Richardson & Colburn,
Attorneys & Counsellors at Law,
Two Rector Street,
New York, N. Y.

Gentlemen:

Reference is made to your telegram of January 3, 1940, requesting an early reply to your letter of October 31, 1939 (JS/gc), relative to customs catalog

number 3418 and a telegram of June 25, 1932, addressed to the collector of customs at New York changing the general rule on page 3 of said customs catalog.

It has been necessary to refer the matter to the collector of customs at New York for a report. As soon as that officer's report is received a full reply to your letter will be addressed to you.

By direction of the Commissioner:

Very truly yours,

(325.32)

/s/ B. H. FLINN,
B. H. Flinn,
*Chief, Entry and Appraisement.*

TREASURY DEPARTMENT
Bureau of Customs
Washington

Mar. 6, 1940.

Barnes, Richardson & Colburn,
Attorneys & Counsellors at Law,
Two Rector Street,
New York, N. Y.

Gentlemen:

Further reference is made to your letter of October 31, 1939 (JS/gc), in the matter of the amendment of Customs Catalog 3418 by telegram of June 25, 1932, addressed to the collector of customs at New York, N. Y. You inquire whether Customs Catalog 3418 and the letter (telegram) of June 25, 1932, were ever published as Treasury Decisions or otherwise or were promulgated as a special regulation by the Secretary of the Treasury.

The record in the Bureau indicates that the questions you ask are before the United States Customs Court in pending litigation. The Bureau must therefore decline to comment with respect to these justiciable issues.

Very truly yours,

(325.32)

W. R. JOHNSON,
*Acting Commissioner of Customs.*

Counsel for the plaintiff then offered in evidence an affidavit executed by H. A. McArthur, president of the Lacta Separator Co., the ultimate consignee of the merchandise at bar. Counsel for the Government objected to the admission of the affidavit. The objection was overruled on the ground that the affiant's presence could not reasonably be had, and the affidavit was admitted in evidence as exhibit 12. The pertinent portion of said affidavit reads as follows:

I am familiar with the cream separators covered by Reappraisement No. 117447–A, Entry No. 345663, S/S *Washington*, entered February 7, 1936; and Reappraisement No. 117448–A, Entry No. 807889, S/S *Sagaporack*, entered March 3, 1936.

The first time that my attention was ever called in any way to a certain telegram dated June 25, 1932, from the Acting Secretary of the Treasury to the Collector of Customs at New York amending Customs Catalogue 3418, was after the first hearing of this case on October 19, 1937, when I was informed by my attorneys that the Government was relying upon the said telegram in an attempt.

to support the validity of these appraisements. Prior to the time when my attorneys informed me about this telegram, I did not know that it existed nor, so far as I know, was anyone else in my company aware of this telegram. I was never informed of the same by my custom house brokers, Leonard W. Moritz Co., nor by anyone in the Custom House or Appraisers Stores at Chicago, nor by anyone in the Custom House or Appraisers Stores at New York.

The cream separators involved in these two reappraisements were ordered by me for the Lacta Separator Co., Inc. They were not bought by sample.

At this juncture counsel for the Government moved to have these cases transferred to Chicago for the taking of testimony, which motion was denied by the trial judge.

The Government offered in evidence the testimony of Francis T. Hickey, associate attorney in the law division of the New York Custom House. He testified that he had, at the request of Government counsel, searched the records of the old editions of the Journal of Commerce and had found two references to the telegram (exhibit 8) in said files. Photostatic copies of two papers containing the said references were then offered in evidence by counsel for the Government and marked collective exhibit 13 for identification. Objection to the admission of these photostatic copies being made by counsel for the plaintiff, the trial judge reserved his decision pending the submission of some authority by counsel. Subsequently, the following stipulation was entered into by and between counsel for the respective parties:

IT IS HEREBY STIPULATED AND AGREED, subject to the approval of the Court, that the two photostatic copies of certain pages of the Journal of Commerce, as to the admissibility of which the Court reserved ruling, and which were marked Collective Exhibit No. 13 for identification in these cases, are in fact true photostatic copies of the original pages photographed from the editions of the Journal of Commerce published on June 29, 1932, and July 1, 1932, respectively.

IT IS FURTHER STIPULATED AND AGREED that this concession as to authenticity of the aforesaid Collective Exhibit No. 13 is made by plaintiffs' counsel without waiving any objections made by plaintiffs' counsel at the trial herein as to the materiality, relevancy and competency of the said photostats as proof of promulgation of the special regulation here in controversy.

IT IS FURTHER STIPULATED AND AGREED, subject to the approval of the Court, that this stipulation be received in evidence in these cases nunc pro tunc.

Counsel for the Government then offered typewritten copies of said references made by the witness, which were marked collective exhibit 14 for identification.

The photostatic copies, above referred to, which in view of the foregoing stipulation are now admitted in evidence as collective exhibit 13, read as follows:

from JOURNAL OF COMMERCE, July 1, 1932.

The United States Court of Customs Appeals has sustained the Customs Court for voiding appraisement of two shipments of wrapping paper imported by Gilson Bros., New York, because 10 percent of each consignment was not actually under examination as required by law and the Secretary of the Treasury had not specifically authorized exception from the rule.

Publication of the decision explains the recent action of Customs officials here in suddenly withholding release of import packages until Acting Secretary of the Treasury Seymour Lowman this week directed a change.

The two shipments in question consisted of 354 and 814 rolls of paper, respectively. Instead of retaining one roll out of every ten for inspection, the Collector ordered only two rolls to the Appraiser's Store on the theory that all were alike. The entered value was advanced, penalties assessed and after liquidation of the entries protest was lodged claiming appraisement was not according to law.

In approving the decision of the lower court appealed by the Government, Justice Lenroot raises no question as to the correctness of an appraisement based on less than 10 percent of a stated class of merchandise but he agrees that the law was not observed. A letter from the Secretary of the Treasury, he adds, is not sufficient authority for examination of a less quantity, as it merely permits the Collector to use his discretion. Acting Secretary Lowman's orcer lists the various classes of imports and number of packages which may be held for inspection.

While the full 10 percent examination was in force for only a short period, it hampered and caused added expenses both to the Customs and importers. One shipment here of 10,000 cases of tomatoes necessitated the transferring for inspection of 1,000 cases.

from JOURNAL OF COMMERCE, June 29, 1932—Page 19.

### INSPECTION PRACTICE RESUMED

Customs officials here have reverted to the old practice on ordering a portion of every import shipment detained pending actual examination by the United States Appraiser, as the result of an order signed by Seymour Lowman, Acting Secretary of the Treasury. The law specifies that 10 percent of a consignment shall be inspected unless the Secretary otherwise authorizes, and when a recent court ruling voided appraisement because of improper ordering, the law was enforced rigidly. Hereafter, only representative samples will be detained out of bulk shipments or those consisting of one kind and quality of articles.

It will be observed that the matters contained in these two editions of the Journal of Commerce are in no sense official communications from the Treasury Department, but are simply newspaper items which, in themselves, in my opinion, have little or no probative value.

The question of the "lay out" of the New York Customhouse having come up, the witness David W. Benedict was recalled. He testified in part as follows:

Judge DALLINGER. Has there been any change so far as the accessibility to this catalogue and copies of the telegram are concerned? In other words, is it just as easy if an importer or Customs broker wants to look at one of those catalogues with the telegram copies in them now as before?

The WITNESS. It is just a matter of asking for the privilege.

Judge DALLINGER. They would have to ask before, and they would have to ask now?

The WITNESS. The same as if you went to a library and wanted a book.

Judge DALLINGER. There has been no change in that respect?

The WITNESS. No, sir.

At the conclusion of the testimony, at the request of counsel, the trial judge agreed to visit the custom house and take a view. This was done on the following Friday after the trial.

Upon the entire record I find that there was no proper promulgation of the alleged special regulation of the Secretary of the Treasury authorizing the collector of customs at the port of New York to

designate and the appraiser to examine less than 1 out of every 10 packages of the merchandise herein.

This whole question has a very interesting history. In the case of *United States* v. *Gilson Bros.*, 20 C. C. P. A. 117, T. D. 45753, involving the question of the dutiable value of certain writing paper, the Court of Customs and Patent Appeals held that a certain letter written by the Assistant Secretary of the Treasury authorizing the collector at the port of New York to use his own judgment as to whether the examination of less than 1 package of every 10 of importations consisting of commodities named in a certain list (customs catalog 3418) would be sufficient to protect the revenue, was an attempted delegation of power and could not be relied upon to sustain the validity of the appraisements at issue, which latter were declared to be null and void, under the mandatory provisions of the Tariff Act of 1922. Moreover, in that case the appellate court held that the burden of proof was not upon the importers to establish that a special regulation, such as contemplated by said section 499, was in existence at the time of the importation in question.

In the case of *Daniel F. Young, Inc.* v. *United States*, Reap. Dec. 4476, 1 Cust. Ct. Rep. 804, the Second Division of this court sitting in review, reversed the decision of the trial judge and held that a telegram, which was issued therein referring, as here, to customs catalog 3418, did not constitute a valid regulation under section 499 of the Tariff Act of 1930. In that case this court said:

> Without considering the question as to whether the Secretary of the Treasury by the telegram in question could amend customs catalog 3418—a document which has been held by the Court of Customs and Patent Appeals not to be a special regulation in any sense—it is to be noted that the telegram in question does not refer to any special kind of merchandise but is a blanket order referring to all merchandise bought by sample, imported in packages of the same contents and value, or when purchased at the same price per unit of weight, gauge, or measure, which would include the great bulk of the merchandise imported at the port of New York.
>
> This manifestly would be delegating to the collector of customs at the port of New York the determination as to what particular merchandise need not be examined as provided for in the mandatory provisions of section 499 of the Tariff Act of 1930.
>
> \*      \*      \*      \*      \*      \*      \*
>
> Moreover, the effect of the said telegram, taken in connection with customs catalog 3418, is to repeal, so far as the great mass of merchandise enumerated in the various paragraphs of the Tariff Act of 1930 is concerned, the mandatory provision in section 499 of the said act enacted by the Congress for the protection of the Government revenues. If the Treasury Department is desirous of rendering inoperative this particular provision of section 499 which the Court of Customs and Patent Appeals has repeatedly held to be mandatory, the proper method to pursue is to request the Congress to amend the said section 499 to harmonize with the views of the Treasury Department.
>
> \*      \*      \*      \*      \*      ·  \*      \*

For the above reasons we are, therefore, of the opinion that the telegram in question together with the customs catalog 3418 does not constitute a valid special regulation of the Secretary of the Treasury within the meaning of section 499 of the Tariff Act of 1930, and that so far as the New York entries are concerned the motion of counsel for the plaintiff for judgment vacating the appraisements of those entries on the ground that they are null and void should be granted.

In arriving at this conclusion, we are not unmindful of the recent decision of the United States Court of Customs and Patent Appeals, by a divided court, in the case of *United States* v. *C. J. Tower & Sons (J. A. Forrest, Anderson Grain & Feed Co.)*, 24 C. C.·P. A. 304, T. D. 48754. In that case the majority of the court said:

We are, therefore, of the opinion that by the term "special regulation" Congress intended to authorize the Secretary of the Treasury, under certain circumstances, to make a regulation apply only to a special port or ports and to special goods * * *.

\* \* \* \* \* \* \*

We are greatly impressed, however, with the dissenting opinion of Judge (now Presiding Judge) Garrett. After reference to the constitutional objection to a special regulation applicable to only one port, to which we have already referred in this opinion, the learned judge proceeds as follows:

It seems to me, therefore, that to be a valid regulation it must be as general in its application as the statute which authorizes it, the statute itself not otherwise providing. * * *

\* \* \* \* \* \* \*

I am unable to reconcile myself to the view that it was incumbent upon the importers, under the facts of this case, to prove that a regulation had not been promulgated. The existence of the paper, now asserted to be a regulation, was, so far as the record shows, solely within the knowledge of the Government officials concerned. * * *

In view of the fact that since the decision in the case of *United States* v. *C. J. Tower & Sons, supra,* there has been a change in the membership of the United States Court of Customs and Patent Appeals due to the untimely death of Presiding Judge Graham, and in view of the apparent prohibition in the Constitution of the United States already referred to and to which no reference was made in the majority opinion in said case, we feel that the question of the validity of the purported special regulation, when addressed to the collector of customs at a single port, should again be presented to the United States Court of Customs and Patent Appeals.

\* \* \* \* \* \* \*

Moreover, for the reasons so aptly stated by Judge Kincheloe in the case of *United States* v. *Boston Paper Board Co., supra,* and by Judge Garrett in his dissenting opinion in the case of *United States* v. *C. J. Tower & Sons et al., supra,* the purported special regulation in the instant case shows from its very nature that it was not promulgated in any sense of the term, so that it was not incumbent upon the plaintiff to prove that it was not promulgated.

The Court of Customs and Patent Appeals, however, in the case of *United States* v. *Daniel F. Young, Inc. (Minobu Trading Corp.), et al.,* 27 C. C. P. A. 124 C. A. D. 73, reversed the decision of the Second Division of this court sitting in review, and held that customs catalog 3418, as amended by the telegram of the Acting Secretary of the Treasury, which is the same telegram as is in evidence herein, constituted a valid special regulation of the Secretary ·of the Treasury,

citing the case of *United States* v. *C. J. Tower & Sons,* 24 C. C. P. A. (Customs) 304, T. D. 48754.

The court, however, in its opinion assumed that the said regulation was duly promulgated *there being no evidence to the contrary.*

In the instant case, the telegram, which, in conjunction with customs catalog 3418, the Court of Customs and Patent Appeals in its latest decision in *United States* v. *Daniel F. Young, Inc., supra,* has held to be a valid special regulation by the Secretary. of the Treasury, providing the same was duly promulgated, in effect practically repealed the mandatory provision in section 499 of the Tariff Act of 1930, so far as the port of New York was concerned, for the reason that customs catalog 3418 virtually covered all the paragraphs of said Tariff Act. It thus constituted one of the most important and sweeping regulations ever made by the Treasury Department in customs matters. Under these circumstances I cannot conceive any reason why a copy of said telegram should not have been published in the TREASURY DECISIONS, which has always been the recognized medium of promulgating regulations of the Treasury Department. It is conceded it was not so published. The telegram was sent to the collector at the port of New York and by him was shown to each of the entry clerks with the understanding that each of them should copy the said telegram in his desk copy of customs catalog 3418.

The Government witness Zwinge, chief entry clerk, having all the entry clerks under his supervision and therefore in the best position to know, when asked if copies of the telegram were circulated among importers and customs brokers replied that he did not think so. He also testified that if the entry division desired to give any particular notice to brokers it would place such notice at the receiving desk where entries are filed, and that he did not think such a notice was given in connection with this telegram.

The Government witness Benedict testified in reply to questions by the court that an importer in order to obtain knowledge of the telegram in question, it merely being pasted in one of the customs catalogs 3418, would have to ask for it the same as if he went to a library and wanted a certain book.

In my opinion none of these things constitutes a proper promulgation of the telegram in question. Neither, in my opinion, do the news items appearing in the New York Journal of Commerce constitute such a promulgation. They were in no way official and simply represented a newspaper reporter's story. Newspaper articles of this character are often inaccurate.

Moreover, it would seem clear from the entire record that no copy of said telegram was posted on either of the bulletin boards at the customhouse, particularly on the bulletin board in the entry division

where notices of interest to importers and brokers were accustomed to be posted.

Furthermore, there is ample evidence that customs brokers and customs representatives who visited the customhouse daily watched the bulletin board, were unaware of the existence of the telegram in question.

In short, the alleged promulgation contended for by counsel for the Government was nothing more nor less than a letter of instructions to the collector of customs at the port of New York which was handed by him to his entry clerks for their guidance. Its contents were not made known to importers and customs brokers in the usual manner through posting the same on the bulletin board in the absence of publication in the weekly TREASURY DECISIONS, which in this case, above all others, should certainly have been done.

In the case of *Canada Packers, Ltd.* v. *United States*, R. D. 4256, 73 Treas. Dec. 1445 (affirmed on appeal in *United States* v. *Canada Packers, Ltd.*, R. D. 4417, 1 Cust. Ct. Rep. 673), in holding that a certain Treasury Department letter had not been duly promulgated as a special regulation, this court said:

Counsel for the plaintiff then offered in evidence the testimony of two witnesses; Chauncey W. Shaffer, assistant collector of customs at the port of Buffalo, testified that he was acting as deputy collector in August 1932, at the time the letter in evidence as Exhibit 6 was written; that he recollected receiving the original of said letter; that he received and read the weekly TREASURY DECISIONS and that to the best of his knowledge no copy of said letter was ever published in the TREASURY DECISIONS pamphlets.

On cross-examination he testified that a copy of the letter in evidence as Exhibit 6 was sent to the subports of Niagara Falls and North Buffalo; that prior to the receipt of the letter in question he had received a similar letter applying to the same articles of merchandise; that said letter is the identical letter admitted in evidence as Exhibit 2 in the case of *United States* v. *C. J. Tower & Sons*, Customs Appeals 3946, subject of T. D. 48754; that the plaintiff was the same in both cases; that neither the importer nor his customs broker inquired at the witness' office as to whether there was in existence a special regulation applying to the hides in question; and that if such a request had been made the witness would have shown the letter to said parties.

The second witness, D. L. Tower, a member of the firm of C. J. Tower & Sons, customs brokers in the instant case, testified that he had made the entry herein for the plaintiff, the Canada Packers, Ltd.; that at the time he made said entry he had no knowledge of the letter to the collector of customs at Buffalo dated August 6, 1932, admitted in evidence as Exhibit 6; that he never saw it nor a copy thereof; that he subscribed to and received each week regularly copies of the pamphlets containing the Treasury Decisions; that he had never seen any copy of said letter published therein.

\* \* \* I find upon the record before me that assuming that the letter of Acting Secretary Lowman if legally promulgated can be considered a special regulation within the meaning of said section 499, the plaintiff certainly has made out a *prima facie* case that the said regulation was not promulgated in such a manner as to give notice to interested parties.

Upon the established facts herein and the law applicable thereto, I find, as hereinabove stated, that there was no proper promulgation of the alleged special regulation of the Secretary of the Treasury authorizing the collector of customs at the port of New York to designate and the appraiser to examine less than 1 out of every 10 packages of the merchandise herein. Therefore, the mandatory provisions of section 499 of the Tariff Act of 1930 were not complied with, and consequently the appraisements herein must be and they hereby are held to be null and void.

Judgment will be rendered accordingly.